UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LASCO FOODS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:08CV01683 JCH |
| | ) |
| HALL AND SHAW SALES, MARKETING, | ) |
| & CONSULTING, LLC, et al.[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion") (Doc. No. 50).[2] The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Lasco Foods, Inc. ("Lasco" or "Plaintiff") is a Missouri limited liability corporation with its principal place of business in the State of Missouri. (Third Amended Complaint ("Complaint" or "Compl."), Doc. No. 49, ¶ 1). Defendant Ronald N. Hall, a resident of Weatherford, Texas, was formerly employed by Lasco as a Regional Sales Manager. (Compl., ¶¶ 2, 43). Defendant Charles R. Shaw, a resident of St. Charles County, Missouri, was formerly employed by Lasco as a National and Regional Sales Manager. (Compl., ¶¶ 3, 20). Defendant Hall and Shaw Sales, Marketing &

---

[1] Plaintiff dismissed its claims against Consolidated Mills, Inc., with prejudice, on September 11, 2009. (Doc. No. 73).

[2] This Court previously granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint on January 22, 2009. (Doc. No. 24). In that Order, the Court found that Plaintiff had failed to adequately plead that Defendants' access to Plaintiff's information was "unauthorized," as required under Computer Fraud and Abuse Act ("CFAA") and Stored Wire and Electronic Communications Act ("SECA"). Since then, Plaintiff filed a Second Amended Complaint (Doc. No. 26), which Defendants answered. (Doc. No. 31). Thereafter, Plaintiff sought leave and filed a Third Amended Complaint (Doc. Nos. 48, 49), which is the subject of the instant Motion.

Consulting LLC ("HSSMC") is a Missouri limited liability company. (Compl., ¶ 4). Defendants Shaw and Hall formed and currently work for HSSMC. (Compl., ¶¶ 59-62).

Plaintiff filed its Third Amended Complaint on May 18, 2009. (Doc. No. 49). Plaintiff asserts the following claims for relief: Misappropriation of Trade Secrets in Violation of the Missouri Uniform Trade Secrets Act ("MUTSA"), Mo. Rev. Stat. § 417.450, et seq. (Count I), Violations of SECA, 18 U.S.C. § 2701, et seq. (Count II), Violations of CFAA, 18 U.S.C. § 1030, et seq. (Count III), Unfair Competition (Count IV), Violation of the Missouri Statute Against Tampering with Computer Data and Equipment, R.S. Mo. §537.525, and the Missouri Statute Against Tampering with Computer Equipment, R.S. Mo. § 569.097 (Count V), Conversion (Count VI), Tortious Interference with Plaintiff's Contracts and/or Business Expectancies (Count VII), Civil Conspiracy (Count VIII), and Breach of Duty of Loyalty to Lasco (Count IX).

As stated above, Defendants filed the instant Motion to Dismiss on May 29, 2009. (Doc. No. 50). Defendants allege that Plaintiff has not properly pled its claims under SECA and CFAA, and those claims must be dismissed. Specifically, Defendants claim that Plaintiff has not pled sufficient facts to demonstrate that Defendants' access to Plaintiff's confidential and trade secret information ("Information")[3] was unauthorized, as required by both statutes. Defendants assert that the state law claims likewise must be dismissed because the state common law claims are preempted by MUTSA and because this Court lacks supplemental jurisdiction these claims.

## STANDARD FOR MOTION TO DISMISS

---

[3]Lasco identifies its confidential and trade secret information as including, but not limited to, "customer lists, prospect lists, pricing information, customer preferences, costs and processes, profit margins, proprietary processes, and recipes and formulae." (Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("Memorandum in Opposition"), Doc. No. 57, p. 2 (citing Compl., ¶¶ 13, 15, 20, 21, 23, 44, 46)).

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 78 S. Ct. 99 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp., 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### I. CFAA

"The CFAA criminalizes various fraudulent or damaging activities related to the use of computers." Fiber Sys. Int'l v. Roehrs, 470 F.3d 1150, 1156 (5th Cir. 2006). CFAA recognizes "private causes of action for individuals damaged by computer fraud: 'Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.'" In re AOL, Inc. Version 5.0 Software Litig., 168 F. Supp. 2d 1359, 1368 (S.D. Fla. 2001) (quoting 18 U.S.C. § 1030(g)).

To state a cause of action under CFAA, Plaintiff must allege that the Defendants Hall and Shaw accessed its Information "without authorization." See 18 U.S.C. § 1030. CFAA does not define the term "without authorization." (Defendants' Reply Brief in Support of Their Motion to Dismiss Plaintiff's Third Amended Complaint ("Reply"), Doc. No. 62, p. 3). Defendants rely on Shamrock Foods Co. v. Gast, 535 F.Supp. 2d 962 (D. Az. 2008) which discussed the meaning of "without authorization" under CFAA. Id. at 964-65. The Shamrock Foods court noted that "[s]ome courts have applied principles of agency law to the CFAA and have held that an employee accesses a computer 'without authorization' whenever the employee, without knowledge of the employer, acquires an adverse interest or is guilty of a serious breach of loyalty." Id. at 964 (citing cases). The Shamrock Foods court, however, noted that other courts have held that the phrase "without authorization" applies to "outsiders who do not have permission to access the plaintiff's computer in the first place." Id. at 964-65 (citing cases). The Shamrock Foods court agreed with the reasoning of the latter group of cases and determined that CFAA's "without authorization" requirement applies only to computer hackers or other unauthorized outsiders, not employees. Id. at 965; see also Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda, 390 F. Supp. 2d 479, 495 (D. Md. 2005) (citations omitted) (Federal courts interpreting SECA and CFAA have noted that their "general purpose . . . was to create a cause of action against computer hackers (e.g., electronic trespassers).").

Along the contrary line of cases, in International Airport Centers, LLC v. Citrin, 440 F.3d 418 (7th Cir. 2006),[4] Citron quit his employer, IAC, and went to business for himself, in breach of his employment contract. Id. at 419. Before returning his IAC issued and owned laptop, Citron utilized a secure-erase program that erased the his employer-owned data as well as data demonstrating the

---

[4]This case came before the Seventh Circuit on appeal from dismissal of the plaintiff's suit for failure to state a claim. Id. at 418.

formation of his new business venture. Id. On appeal, Citron argued that erasing a file does not constitute a transmission within the meaning of CFAA. See 18 U.S.C. § 1030(a)(5)(A) (whoever "knowingly causes the *transmission* of a program, information, code or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer" violates CFAA) (emphasis added).[5] The Citron court held that Citron's transmittal of a secure-erasure program to the computer constituted a "transmission" under CFAA.[6] 440 F.3d at 420.

In addition, the Citron court also noted that, in CFAA, Congress intended to address both outside internet hackers[7] and also internal disgruntled programmers. Id. Congress demonstrated that it intended CFAA to reach the actions of the disgruntled programmer by providing that whoever, "*intentionally accesses* a protected computer without authorization, and as a result of such conduct, recklessly causes damage," violates CFAA. Id. (emphasis in original)(citing 18 U.S.C. § 1030(a)(5)(B)).[8] The Seventh Circuit held that Citron had violated that subsection because his authorization terminated "when, having already engaged in misconduct and decided to quit IAC in violation of his employment contract he resolved to destroy files that incriminated himself and other files that were also the property of his employer, in violation of the duty of loyalty that agency law

---

[5]Based upon a prior version of the act, the Citron court refers to this section as 18 U.S.C. § 1030(a)(5)(A)(i).

[6]Defendants argue for the first time in their Reply that Plaintiff cannot demonstrate there was a "transmittal," as required under CFAA. (Reply, pp. 5-6). Only § 1030(a)(5)(A) has the "transmission" requirement. See 18 U.S.C. § 1030(a)(5)(A). Even if this Court were to find that there was not a "transmission," Plaintiff could still state a claim under § 1030(a)(4), § 1030(a)(5)(B) or § 1030(a)(5)(C).

[7]See In re AOL, Inc. Version 5.0 Software Litig., 168 F. Supp. 2d at 1370 (the phrase "without authorization" in §§ 1030(a)(5)(B) and (C) "contemplate[s] a situation where an outsider, or someone without authorization, accesses a computer").

[8]Based upon a prior version of the act, the Citron court refers to this section as 18 U.S.C. § 1030(a)(5)(A)(ii).

imposes on an employee." Id. at 420 (citing cases). Because Citron was acting in his own interests, not those of this employer (IAC), Citron was not authorized to access that company's trade secret information.

The Citron court also noted, as the Defendants do in the present case,[9] that CFAA distinguishes between "without authorization" and "exceeding authorized access," 18 U.S.C. §§ 1030(a)(1),(2),(4),(5). Id. at 420; see also 18 U.S.C. §§ 1030(e)(6) (defining "exceeds authorized access). The Citron court stated that, while "exceeding authorized access" may be a "more apt" description of Citron's actions, the difference between "without authorization" and "exceeding authorized access" is "paper thin."[10] The Citron court found that Citron had acted "without authorization" because he breached his duty of loyalty, which terminated any rights or authority he had as IAC's agent. Id.; see Restatement (Second) of Agency §112 (1958) ("Unless otherwise agreed, the authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal.").[11] When Citron decided to act out of his own interests, instead of his employer's interests, his "authority to access the laptop" was voided "because the only basis of his authority had been that relationship."

---

[9]Defendants seem to argue that Plaintiff's claim, if any, should be for exceeding authorized access. Defendants note that CFAA defines "exceeds authorized access" as to "access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." (Reply, p. 3) (citing Shamrock Foods Co., 535 F.Supp. 2d at 965;18 U.S.C. § 1030(e)(6)).

[10]As discussed below, this Court finds that Plaintiff sufficiently pled "without authorization" so this Court saves for another day the discussion regarding the difference, if any, between "without authorization" and "exceeding authorized access" in a situation such as this. See also Modus, Inc. v. Bardelli, 531 F. Supp. 2d 314, 319 (D. Conn. 2008) (In denying the defendant's motion to dismiss plaintiff's CFAA claim, the court held that plaintiff had sufficiently pled the element of "access that exceeded authorization" where the employee's authorization to plaintiff's database was limited to access "in furtherance of Modis' Business").

[11]The Missouri Supreme Court has adopted the Restatement (Second) of Agency. See State ex rel. Ford Motor Co. v. Bacon, 63 S.W.3d 641, 642 (Mo. 2002).

Id. at 420-21; see also Ervin & Smith Adver. & Pub. Rels., Inc. v. Ervin, No. 8:08cv459, 2009 U.S. Dist. LEXIS 8096, at * 22-23 (D. Neb. Feb. 3, 2009) ("The Court concludes that while the Defendants ordinarily may have been authorized to access the information they appropriated from Plaintiff, that authorization was terminated when Defendants destroyed the agency relationship by accessing and appropriating the protected information for their own personal gain and against the interest of their employer."); Nilfisk-Advance, Inc. v. Mitchell, No. 05-5179, 2006 U.S. Dist. LEXIS 21993, at *6-7 (W.D. Ark. Mar. 28, 2006) (plaintiff stated a CFAA cause of action when plaintiff alleged that "Mitchell exceeded any authorization he had when he e-mailed the files to his personal computer with alleged purpose of misappropriating the information contained in them"); Personalized Brokerage Services, LLC v. Lucius, No. 05-1663, 2006 U.S. Dist. LEXIS 36176, at *6-7 (D. Minn. Jan. 25, 2006) (finding the plaintiff had stated a claim under CFAA and that court had federal jurisdiction when the plaintiff alleged that its former employee exceeded his "authorization by using its computers to set up his competing business, email competitors, distribute [employer's] proprietary information to software developers, and negotiate contracts to sell products to [employer's] competitors"); Shurgard Storage Ctrs. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1125 (W.D. Wash. 2000) ("for purposes of this 12(b)(6) motion, [the former employees] lost their authorization and were 'without authorization' when they allegedly obtained and sent the proprietary information to the defendant via e-mail").

Here, Lasco has alleged that Hall and Shaw accessed Lasco's Information and used that information to advance their own interests and HSSMC's interest. Plaintiff pled that Defendants had authorization only to further the interests of Lasco, and did not have authorization to act in furtherance of their own business interests while employed by Lasco. (Compl., ¶ 21). Specifically, Plaintiff pled that Shaw and Hall "did not have authorization to access Lasco's Trade Secret

Information for the purpose of deleting the Information, altering the Information in anyway [sic], or copying the Information to a personal computer or storage media." (Compl., ¶¶ 21, 44). Defendants Shaw and Hall also "did not have any authorization to access the Information in any manner or for any purpose upon termination of his employment with Lasco." (Compl., ¶¶ 21, 44). Accordingly, "the Court concludes that Defendants never had authorization to access Plaintiff's protected information to further their own business interests." Ervin & Smith Adver. & Pub. Rels., Inc., 2009 U.S. Dist. LEXIS 8096, at *24 ("Instead, when Defendants allegedly violated the Confidential Agreement and allegedly appropriated Plaintiff's secret information for their own private benefit, they exceeded their 'authorized access.'"). Under the statute, the Restatement, and the reasoning of Citron and other courts, Lasco sufficiently alleged that Hall and Shaw acted without authorization when they obtained Lasco's Information for their personal use and in contravention of their fiduciary duty to their employer, Lasco. Defendants' Motion to dismiss Plaintiff's CFAA claim is denied.

## II. SECA

In Count II, Plaintiff alleges a SECA claim against the Defendants. Section 2701(a) of SECA provides that:

> whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2707 provides a civil cause for any violation of SECA. See 18 U.S.C. § 2707(a) ("any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter [18 U.S.C. §§ 2701 et seq.] in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, ... which engaged in that violation such relief as may be appropriate").

Defendants' Motion presents the question of whether Lasco sufficiently alleged a colorable claim that Defendants Hall's and Shaw's access to Lasco information was "unauthorized," as required under SECA. See Sherman & Co. v. Salton Maxim Housewares, Inc., 94 F. Supp. 2d 817, 821 ( E.D. Mich. 2000) ("Where a party consents to another[']s access to its computer network, it cannot claim that such access was unauthorized."). Defendants argue that there cannot be a cause of action under SECA if Hall's and Shaw's access to the computer systems at issue was authorized.

This Court finds that Plaintiff states a claim against Defendants under SECA. Here, unlike in its First Amended Complaint, Lasco has alleged that Defendants had direct, continuous, and extensive authorization to access Lasco's Information for the limited purpose of using the Information to further the business interests of Lasco. (Compl., ¶¶ 21, 44). While Lasco afforded Defendants access to its computers, networks and Information for purposes of their employment, Lasco alleged that Hall and Shaw accessed Lasco's Information to benefit the interests of Defendants, not Lasco. Defendant Hall and Shaw's authorization to access this information ceased when they breached their duty of loyalty to Lasco and their employment terminated. Lasco also identified the specific restricted information that Defendants accessed after their authorization from Lasco terminated.[12] Accordingly,

---

[12]Lasco alleges that it performed a forensic analysis of a USB storage drive and discovered that Defendant Shaw had accessed, printed and/or copied Lasco's Information from the drive after his authorization to access the Information had been revoked. Lasco alleges that, on August 22, 2008, after the termination of Shaw's employment, Shaw accessed two documents on his home computer that he had forwarded from his Lasco computer. These e-mails included allegedly confidential information from Lasco. (Compl., ¶¶ 39-40).

Similarly, Lasco alleges that Defendant Hall "did not have any authorization to access the Information in any manner or for any purpose following the termination of his employment with Lasco." (Compl.,¶ 44). Lasco alleges that, on September 23, 2008, the day after Hall resigned, Lasco sent Hall a letter demanding that he preserve the information on the laptop computer and return the laptop to Lasco. (Compl., ¶ 51). A forensic analysis performed on Hall's laptop computer provided by Lasco demonstrated that Hall had accessed and deleted Information from the computer after the termination of Hall's employment, and after Hall's authorization to access the Information had been revoked. (Compl., ¶ 53).

at this stage of the litigation, the Court finds that Plaintiff has sufficiently plead a SECA violation and denies Defendants' Motion to Dismiss Lasco's SECA claim.

## III. STATE LAW CLAIMS

Defendants argue that Plaintiff's state law claims in Counts IV, VI - VIII are preempted by the Missouri Uniform Trade Secrets Act ("MUTSA"). "Under the Missouri Uniform Trade Secrets Act, a plaintiff may obtain an injunction or seek damages for the misappropriation of trade secrets." Foam Supplies, Inc. v. Dow Chem. Co., No. 4:05CV1772, 2006 U.S. Dist. LEXIS 53497, at *41 (E.D. Mo. Aug. 2, 2006) (citing Mo. Rev. Stat. §§ 417.455, 417.457). The MUTSA "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463(1). "Thus, by virtue of the statute, civil claim[s] that are derivative of a claim of misappropriation of trade secrets are preempted. A claim that is based on facts related to the misappropriation claim is deemed derivative and, thus, preempted." Bancorp Services, LLC v. Hartford Life Ins. Co., No. 4:00cv70, 2002 U.S. Dist. LEXIS 26267, at *12-13 (E.D. Mo. Feb. 25, 2002). Defendants claim that "Counts IV through VIII of its Third Amended Complaint merely reallege Plaintiff's trade secrets cause of action under the guise of a different cause of action," and should be preempted. (Reply, p. 9).[13]

### A. Count IV and Count IX

In Count IV, Plaintiff alleges that Defendants Hall and Shaw breached their common law duties not to compete with Lasco during their employment by "using confidential and trade secret information acquired during and after their employment to solicit the customers they serviced while employed by Lasco for the benefits of Defendants." (Compl., ¶¶ 92-93). Similarly, in Count IX, Plaintiff alleged that Defendant Hall acted contrary to Lasco's interests and for the benefit of

---

[13]As discussed herein, Defendants appear to abandon their Motion to Dismiss Count V based upon a clarification by Plaintiff.

- 10 -

Defendants and thereby breached his duty of loyalty to Lasco. (Compl., ¶¶ 122-126). The basis of both Count IV and Count IX appear to be Defendant Shaw's and Hall's use and misappropriation of Lasco's Information in breach of their duties and obligations to Lasco. Accordingly, these causes of action are preempted by MUTSA. See also Bancorp Services, LLC, 2002 U.S. Dist. LEXIS 26267, at *13 (E.D. Mo. Feb. 25, 2002) (claim for unfair competition preempted by MUTSA).

    B.    Count VI

In Count VI for conversion, Lasco alleges that Defendants assumed ownership over the personal property of Lasco without authorization after Lasco demanded return of the property. (Compl., ¶¶ 105-106). Defendants assert that Count VI derives from Defendants' alleged theft or misappropriation of Lasco's Information. (Defendants' Suggestions in Support of their Motion to Dismiss Plaintiff's Third Amended Complaint ("Memorandum in Support"), Doc. No. 51, p. 14). Count VI appears to relate also to Lasco's personal, tangible property, in addition to its Information. (Compl., ¶ 105 (referencing "personal property")). The Court finds that Count VI may state a claim that is not preempted by MUTSA. Cf. Bancorp Services, LLC, 2002 U.S. Dist. LEXIS 26267, at *13 (E.D. Mo. Feb. 25, 2002) (claim for conversion preempted by MUTSA). Defendants' motion to dismiss Count VI is denied.

    C.    Count VII

In Count VII, Plaintiff alleges that Defendants "intentionally interfered with Lasco's customer contracts, relationships and/or expectancies in a manner which included a breach of said contracts and/or severed said relationships." (Comp., ¶ 112). Defendants assert that the basis of Lasco's tortious interference claim is that Defendants "improperly induced its customers to cease doing business with it by utilizing its trade secrets to gain an unfair advantage." (Memorandum in Support, p. 15). Plaintiff's claim for intentional interference with contracts or business expectancies may be

based upon "additional facts aside from the alleged misappropriation of trade secrets." Trinity Hospice, Inc. v. Miles, No. 4:06CV1674, 2007 U.S. Dist. LEXIS 18805, at *8 (E.D. Mo. Mar. 16, 2007). Plaintiff has not limited its claim only to interfering with its business expectancies through utilization of trade secrets. At this stage of the litigation, this Court denies Defendants' motion to dismiss Count VII.

### D. Count VIII

In Count VIII, Plaintiff alleges that "Defendants conspired with one another with the unlawful objective to misappropriate Lasco's Trade Secret Information, engage in unfair competition against Lasco, tortiously interfere with Lasco's contracts and/or business expectancies, and breach Defendant Hall's duty of loyalty to Lasco." (Compl., ¶ 117). "In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) (citing Williams v. Mercantile Bank of St. Louis, 845 S.W.2d 78, 85 (Mo. Ct. App. 1993)). This Court has dismissed Plaintiff's duty of loyalty claim. The Court, however, did not dismiss Plaintiff's conversion and tortious interference claims in Counts VI and VII. Accordingly, the Court denies Plaintiff's motion to dismiss Count VIII to the extent that it alleges a claim for conspiracy to convert Plaintiff's property and/or conspiracy to tortiously interfere with Lasco's contracts and/or business expectancies.

## IV. COUNT V

In Count V, Plaintiff attempts to plead a cause of action under Missouri's Tampering with Computer Data and Equipment Statute, R.S. Mo. §537.525, and Missouri's Tampering with Computer Equipment Statute, R.S. Mo. § 569.097. (Compl., ¶¶ 99-103). In Plaintiff's Memorandum in Opposition, Lasco clarifies that Lasco's claim "concerns [Hall's and Shaw's] actions with respect to the data on the computer." (Memorandum in Opposition, p. 25) (emphasis in original). Plaintiff

acknowledges that although Count V's caption provides that the claim is brought pursuant to R.S. Mo. § 569.097 (which relates to computer equipment),[14] the claim more properly relates to R.S. Mo. § 569.095 (which relates to data).[15] Accordingly, the Court grants Plaintiff ten (10) days to amend its Complaint by interlineation to reflect the proper statute for this claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. No. 50) is **GRANTED**, in part, and **DISMISSED**, in part.

**IT IS HEREBY FURTHER ORDERED** that Counts IV and IX of Plaintiff's Third Amended Complaint are **DISMISSED**, with prejudice.

---

[14] 569.097.1 provides that:
1. A person commits the crime of tampering with computer equipment if he knowingly and without authorization or without reasonable grounds to believe that he has such authorization:
(1) Modifies, destroys, damages, or takes equipment or data storage devices used or intended to be used in a computer, computer system, or computer network; or
(2) Modifies, destroys, damages, or takes any computer, computer system, or computer network.

[15] 569.095.1 provides:
"A person commits the crime of tampering with computer data if he knowingly and without authorization or without reasonable grounds to believe that he has such authorization:
(1) Modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network; or
(2) Modifies or destroys data or programs or supporting documentation residing or existing external to a computer, computer system, or computer network; or
(3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network; or
(4) Discloses or takes a password, identifying code, personal identification number, or other confidential information about a computer system or network that is intended to or does control access to the computer system or network;
(5) Accesses a computer, a computer system, or a computer network, and intentionally examines information about another person;
(6) Receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection."

**IT IS HEREBY FURTHER ORDERED** that Plaintiff has ten (10) days to file an amended Third Amended Complaint in accordance with this Order.

Dated this 26th day of October, 2009.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE